STATE OF MAINE                                SUPERIOR COURT
ANDROSCOGGIN, ss.                             CIVIL ACTION
                                              Docket No. CV-00-191
                                              EAG – AND – 4/22/2002

JOHN BATCHELOR JR.,
        Plaintiff

v.                                                    ORDER

KYLE MARTIN and BOGGS          DONALD L. GARBRECHT         RECEIVED & FILED
MOBILE HOMES, INC.,                LAW LIBRARY
        Defendants                                        APR 22 2002
                                    MAY 8 2002
                                                          ANDROSCOGGIN
                                                          SUPERIOR COURT


                    FACTS AND PROCEDURAL HISTORY

        On October 6, 1994, John Batchelor and Kyle Martin were involved in a motor

vehicle accident in Livermore, Maine.  At the time of the accident, Mr. Batchelor

was working.  Sometime thereafter, Mr. Batchelor retained James J. MacAdam, Esq.,

then a partner with the firm of McTeague, Higbee, to represent him in the worker's

compensation claim and in any civil action arising out of the accident.  In January

1995, Mr. Batchelor sent a notice of claim to Boggs Mobile Home to "start" the

accrual of any prejudgment interest.  No further action was taken in the civil case

for over five years. During the spring of 2000, Attorney MacAdam left the firm of

McTeague, Higbee and established a firm in Portland with Alexander McCann, Esq.

Mr. Batchelor's file was transferred with Attorney MacAdam.

        On October 6, 2000, a complaint, naming Mr. Batchelor as plaintiff and Mr.

Martin and Boggs Mobile Homes, Inc. as defendants, was hand delivered to and filed

in the Androscoggin County Superior Court.  That complaint was not signed by

Attorney MacAdam.  October 6, 2000 was the last date the action could be filed to

meet the six-year statute of limitations. Service on the named defendants was not accomplished by January 5, 2001 as required by M.R. Civ. P. 3. Because service was not completed, neither of the defendants filed an answer. Despite the missing documents, however, the court issued a standard scheduling order pursuant to M.R. Civ. P. 16(a) on February 21, 2001. That order required the plaintiff to file a jury trial request and pay the $300 fee by March 13, 2001, designate his expert witness(es) by May 21, 2001, and to complete discovery by December 21, 2001. In violation of these deadlines, the plaintiff did not request a jury trial, initiated no discovery, and did not name any expert witnesses.

The case remained dormant until November 26, 2001. On that date, Attorney MacAdam filed a motion for extension of time to serve the complaint and to file proof of service. In that motion, Attorney MacAdam explained that his longtime paralegal had failed to complete service in this case, and had concealed that fact, along with multiple errors in other files, for a period of months. He requested that the court find that the failure to serve the defendants had been due to excusable neglect, and that Mr. Batchelor be permitted to proceed with service, and the case, without further delay. The cover letter enclosing that motion did not indicate that it had been copied to Mr. Batchelor or either of the defendants. In an order dated November 29, 2001, the court ordered that the complaint and a copy of the motion be served upon the defendants within twenty days. The returns of service filed December 21, 2001 indicate that the defendants received the documents on December 13 and 18, 2001, more than twelve months after they should have been served.

On January 7, 2002, the defendants filed their opposition to the plaintiff's motion, and filed a motion to dismiss under M.R. Civ. P. 12(b)(6). The motions were argued on April 19, 2002. In addition to the filings made in this case, the court has also had the opportunity to review the decisions issued by Justices Warren and Delahanty in two of the cases pending in Cumberland County. Although the posture of those cases is slightly different, the issues are similar.

## DISCUSSION

In deciding the motions pending here, the court must decide whether, in this case, Attorney MacAdam has established that the neglect exhibited by his office was excusable. M.R. Civ. P. 6(b)(2) permits the extension of the service deadline established in M.R. Civ. P. 3 if the failure to complete service was the result of excusable neglect. Rule 3 allows the court to dismiss the action if the return of service is not timely filed. The parties have all requested that the court exercise its discretion, but have arrived at different interpretations of where the discretion should lead.

For the purposes of this discussion, the court will accept as accurate the statements made by Hollie Pope in her November 12, 2001 affidavit. In that affidavit, Ms. Pope stated that she began making significant errors in the fall of 1999, while she and Attorney MacAdam were still at McTeague, Higbee. Those errors continued to accrete over the next two years, culminating in the actions she took in the case of *Ann Marie Rogers v. NYNEX.*

3

As early as June 2001, Attorney MacAdam was aware that the validity of the consent decree "issued" in the *Rogers* case had been challenged. He could have had no independent recollection of any hearings, depositions or conferences that led to the issuance of a decree in that case, as there were no such events. All of the information about the case came from Ms. Pope. Despite that inherent conflict, Attorney MacAdam continued to rely solely upon Ms. Pope's statements. He apparently did not undertake a complete review of the file until after Ms. Pope admitted her complicity on September 20, 2001. Even with that information, Attorney MacAdam did not undertake the tedious work of reviewing all other files until November, more than one month later.

Counsel for the defendant has argued that permitting the plaintiff to file the late returns will extend the statue of limitations by more than one year, and that the plaintiff has failed to establish that the failure to file was the result of excusable neglect. In *Lane v. Williams*, 521 A.2d 706 (Me. 1987), the Law Court affirmed the trial court's determination that an attorney's failure to file a notice of appeal was not the result of excusable neglect. The failure in that case occurred after the clerical assistant charged with the actual filing had a family emergency that removed her from the office. When the attorney returned to the office from vacation, he learned of the error and filed for an extension to allow the notice of appeal to be filed approximately fourteen days late. The majority decision, written by then Chief Justice McKusick, contains the following explanation:

> Lane's counsel was not justified in relying solely upon his secretary to
> file the notice of appeal in his absence. The attorney, and not his staff,

4

is required as a matter of professional responsibility to assure that his client's interests are served by filing an appropriate notice of appeal. The attorney may discharge that responsibility by filing the notice of appeal himself or by establishing reliable office procedures for ensuring that the notice is seasonably filed. Neglect resulting from counsel's failure to establish such office procedures does not constitute excusable neglect.

*Id.* at 708. The dissent, written by former Chief Justice Wathen, found the result too draconian and the majority's holding an example of its "startling disregard of the realities of a law practice." *Id.* at 709. He wrote that: "If attorneys are required to anticipate the extraordinary events that occurred in this case, and guard against them, even a telephone call will not suffice."

More recently, the Law Court found arguably less egregious circumstances were sufficient to support a determination of excusable neglect, as evidenced by its decision in *Gregory v. Calais*, 2001 ME 82, 771 A.2d 383. In *Gregory*, the plaintiff prevailed in an age discrimination suit against the City of Calais. The City appealed, but the parties then reached an agreement that called for the dismissal of the appeal and a remand of the matter for the determination of attorney fees. Counsel for the plaintiff filed a motion for fees thirteen days after the deadline provided in M.R. Civ. P. 6(b), and defendant moved that the motion be denied as untimely. The trial court ultimately granted the motion for fees. In its decision affirming the trial court, the Law Court held that:

In the matter before us, the court was aware that a proven and trusted member of the law office staff suffered unexpected personal problems, that the law firm had procedures in place ordinarily to assure timely filings, that the City was well aware that the attorney fees were being sought, and that the City suffered no harm or prejudice from the late filing.

5

*Id.*, ¶ 10. In her concurring opinion, Justice Saufley explained that the *Lane* opinion should not be read to mandate "draconian results," and that a determination of excusable neglect could be found in "much less dire circumstances than . . . death . . . ." ¶ 16.

In this case, the court finds that the neglect, or more specifically, the delay, was not excusable. The decision to delay filing of a complaint until the last possible date is one that imposes some extra burden of risk on the plaintiff. That increased risk must be matched by increased vigilance. Here, all of the safeguards in place relied upon Ms. Pope. Although no one could have anticipated the problems she caused, anyone could anticipate that she would make errors like any other fallible employee. If this ordinary fallibility had been acknowledged, the second part of the "double tracking system" would have involved another paralegal, or even a lawyer.

Even more problematic than the existence of the "single employee double tracking system" was the failure to recognize that the system was flawed even after the *Rogers* case came under the scrutiny of litigation. It was not reasonable for the firm to continue to rely upon Ms. Pope's assertions, without any investigation, after June 2001. The delay between June 2001 and November 26, 2001 was inexcusable neglect. As Justice Warren noted earlier this month:

> This case involves a failure to effect service for more than one year, complete inattention to the case by counsel during that time, and a delay of seven weeks in discovering the failure to effect service in this case after counsel had definitively learned that the paralegal in charge of arranging for service, formerly believed to be trustworthy, had lied, falsified documents, and used the firm's money to cover up a default in another case.

*Elliott v. Gilmore*, No. CV-00-538 (Me. Super. Ct., Cum. Cty., Apr. 3, 2002).

Despite the requirements of M.R. Civ. P. 11, the complaint filed in this action was not signed by an attorney. That flawed document was not served upon the defendants within ninety days after it was filed with the court, and the statute of limitations has expired. Pursuant to M.R. Civ. P. 12(b)(6), the case is dismissed, with prejudice.

## ORDER

For the reasons stated above, the plaintiff's motion for extension of time to serve complaint is denied, and the defendants' motion to dismiss is granted with prejudice.

The clerk is instructed to incorporate this order by reference in the docket for this case.

DATED: April 22, 2002

_____
Ellen A. Gorman
Justice, Maine Superior Court

7